UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

PAUL STANTON and
TONYA MOUW,

Plaintiffs,

v.

COUNTY OF HENNEPIN, MINNESOTA,

Defendant.

CIVIL NO. 00-1593 (DSD/JMM)

REPORT AND RECOMMENDATION

The above matter came on for hearing before the undersigned upon Defendant's Motion to Dismiss Count II of Plaintiffs' Complaint [Docket No. 3]. Lawrence Altman, Esq. appeared on behalf of Plaintiffs; Martin Munic, Esq. and Sara Wahl, Esq. appeared on behalf of Defendant. The parties were permitted to file supplemental memoranda after the hearing date. The matter is before the undersigned for a Report and Recommendation to District Court Judge David S. Doty, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B).

Upon the following Findings of Fact/Report, it is recommended that Defendant's Motion to Dismiss Count II of Plaintiffs' Complaint [Docket No. 3] be granted.

## FINDINGS OF FACT/REPORT

### Background

Plaintiffs Paul Stanton and Tonya Mouw are employed by Defendant Hennepin County as Investigators in the Criminal Division of the Hennepin County Attorney's Office. Both voluntarily transferred to the Office of the County Attorney from the

FILED DEC 29 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD ______
DEPUTY CLERK ______

Sheriff's Office where they were employed as Sheriff's Deputies. Plaintiff Stanton began working for the County Attorney in 1979; Plaintiff Mouw began working for the County Attorney in 1985.

At the Sheriff's Office both Plaintiffs were members of the Police and Fire Fund pension plan ("PFF"), a separate plan of the Public Employees Retirement Association ("PERA"), which provides for earlier retirement and an increased pension. Since joining the County Attorney, neither Plaintiff has been sworn as a law enforcement officer nor otherwise made eligible for PFF benefits. In addition, neither has been paid overtime.

In Count I of Plaintiffs Complaint against Defendant Hennepin County, they seek damages under the federal Fair Labor Standards Act, 29 U.S.C. §§ 207, 214, based on Defendant's failure to pay overtime under that statute. Jurisdiction over Count I is based upon allegations of a federal question, 28 U.S.C. § 1331. Count II of the Complaint seeks to assert a claim in negligence. Jurisdiction over Count II is based upon the supplemental jurisdiction provided under 28 U.S.C. §1367. Defendant's Motion is to dismiss only Count II.

**Standard for a Motion to Dismiss**

The Court of Appeals for the Eighth Circuit has provided this standard for the consideration of a Motion to Dismiss pursuant to Rule 12(b)(6):

> "[A] motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Thomas W. Garland, Inc. v. City of St. Louis*, 596 F.2d 784, 787 (8th Cir.), *cert. denied*, 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979). We must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all

> reasonable inferences arising therefrom, most favorably to the pleader. *United States v. Mississippi*, 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965); *see also Bennett v. Berg*, 685 F.2d 1053, 1058-59 (8th Cir. 1983); *Bramlet v. Wilson*, 495 F.2d 714, 717 (8th Cir. 1974)."

Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986); accord Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Hilton v. Pine Bluff Public Schools, 796 F.2d 230, 231-32 (8th Cir. 1986).

In considering a motion to dismiss, courts accept the plaintiff's factual allegations as true, but reject conclusory allegations of law and unwarranted inferences. Silver v. H&R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997).

> "The appropriate inquiry is not whether plaintiff will ultimately prevail but whether he will be allowed to introduce evidence to support his claims. *Scheuer*, 416 U.S. at 236, 94 S. Ct. at 1686. Because dismissal on the pleadings is an extreme remedy it is not favored by the courts and is employed only when 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L.Ed.2d 80 (1957) (footnote omitted); *see Robinson v. MFA Mutual Insurance Co.*, 629 F.2d 497, 500 (8th Cir. 1980)."

TCF Banking and Savings, F.A. v. Arthur Young & Co., 706 F. Supp. 1408, 1410 (D. Minn. 1988). Thus, it is only in the unusual case where the complaint on its face reveals some insuperable bar to relief that a dismissal under Rule 12(b)(6) is warranted. United States v. Aceto Agricultural Chemicals Corp., 872 F.2d 1373, 1376 (8th Cir. 1989); R. W. Murray Co. v. Shatterproof Glass Corp., 697 F.2d 818, 821 (8th Cir. 1983).

**Facts Alleged**

We examine the allegations in Plaintiffs' Complaint to determine whether Plaintiff has stated a cause of action in Negligence. The following narrative is taken from

the allegations in the Complaint. For the purpose of considering the Motion to Dismiss, the Court must accept these allegations as being true.

The position of Criminal Investigator was created in the Office of the Hennepin County Attorney in 1975. The first person to hold the office was Dennis Berry. He accepted the position after being assured that taking the position would allow him to have membership in PFF. [Docket No. 1, Complaint, ¶ 7]. Berry retired twenty-two years later in 1997 without attaining membership in PFF. [Complaint, ¶ 9].

Berry was instrumental in recruiting both Plaintiffs to join the County Attorney's Office. He told them of the promises and assurances which had been made to him. [Complaint, ¶ 8]. Presumably Berry also told them that he was not yet a member of PFF. It is unclear from the Complaint when it was that Berrry made these comments to each Plaintiff, but it was apparently at some point in 1979 and 1985 before Stanton and Mouw joined the Office of the County Attorney. Stanton told "officials of the County Attorney's Office" what Berry had told him, and they "indicated to Stanton that it was true, and that they were working on getting the position properly classified." [Complaint, ¶ 9].

Plaintiffs allege that they would not have taken the job "had they understood that they would be denied membership in PFF as Criminal Investigators." [Complaint, ¶ 10]; that they are "exposed to the same hazards and dangers as police and other law enforcement personnel." [Complaint, ¶¶ 11, 12 and 13]; that it would be possible for Defendant to elect to have the Sheriff swear Plaintiffs in as peace officers, if they had been so sworn, they would be entitled to membership in PFF. [Complaint, ¶¶ 14 and 15]; that since they have not been sworn as peace officers, Plaintiffs cannot be members of PFF; and since they are not in PFF they "are required to retire later and, upon late retirement, will receive greatly diminished, non-PFF pensions upon retirement." [Complaint, ¶ 17].

Based on these facts, Plaintiffs allege negligence in Count II as follows:

> 26. Defendant owed plaintiffs a duty to provide them membership in PFF.
>
> 27. Defendant has breached that duty by failing to have plaintiffs sworn as law enforcement officers by the Sheriff's Office, or otherwise having them sworn.
>
> 28. As a direct result, plaintiffs are required to retire later, and will receive greatly reduced pensions.

[Complaint, ¶¶ 26, 27 and 28]. The prayer for relief does not differentiate between Count I and Count II. It states: "WHEREFORE, plaintiffs request the Court enter a judgment against Defendant for all relief available under the FLSA [as to Count I] and be awarded in excess of $50,000 [as to Count II?] and for such other and further relief as the Court deems just and equitable." [Complaint, p. 8].

## I. The Motion to Dismiss Count II Should Be Granted

Having set forth the allegations in the Complaint, we now consider whether those allegations state a cause of action in negligence. To state a claim for negligence, a plaintiff must show:

> (1) the defendant has a legal duty to the plaintiff to take some action;
>
> (2) there was a breach of that duty;
>
> (3) the breach of the duty was the proximate cause of the harm to the plaintiff; and
>
> (4) damage.

Gilbertson v. Leininger, 599 N.W.2d 127, 130 (Minn. 1999); Hudson v. Snyder Body, Inc., 326 N.W.2d 149, 157 (Minn.1982). "In the absence of a legal duty, the negligence claim fails." Gilbertson, 599 N.W.2d at 130. The existence of duty is a question of law to be

determined by a court. Gilbertson, 599 N.W.2d at 130. Thus, in order to survive a motion to dismiss, Plaintiffs must establish a duty on the part of Hennepin County to provide them membership in PFF.

Plaintiffs' Complaint alleges that Defendant was under a duty "to provide them membership in PFF" and that it breached that duty "by failing to have plaintiffs sworn as law enforcement officers by the Sheriff's Office, or otherwise having them sworn." We do not find a basis upon which it could be found that Defendant owed this duty to Plaintiffs, nor that it was a breach of any duty for Defendant Hennepin County to refrain from having Plaintiffs (or Berry) sworn as law enforcement officers. It is helpful to our analysis to begin by observing certain well-established legal points.

*No Negligence Duty Arises Out of Contract.*

Minnesota law does not permit a cause of action in negligence to be based upon a breach of contract. Minnesota Forest Products v. Ligna, 17 F.Supp. 2d 892, 915 (D. Minn. 1998)("Minnesota...does not recognize a cause of action for negligent breach of contract; thus, the duty that a plaintiff claims the defendant owes her must arise from an obligation outside a contract between the parties."); see also Lesmeister v. Dilly, 330 N.W.2d 95, 102 (Minn.1983)("To prevail in negligence, a plaintiff must prove as one element that the defendant breached 'some duty imposed by law' not merely one imposed by contract."); U.S. v. Johnson, 853 F.2d 619, 622 (8th Cir. 1988); American Home Assur. Co. v. Major Tool and Machine, Inc., 767 F.2d 446, 448 (8th Cir.1985); D & A Dev. Co. v. Butler, 357 N.W.2d 156, 158 (Minn.Ct.App.1984).

According to Plaintiffs' Complaint, when they decided to work at the Office of the County Attorney they were told the same thing Berry was. (They also knew that

Berry worked there for years, and had not been granted membership in PFF.) "Officials" then in the Office of the County Attorney told Plaintiff Stanton they were "working on getting the position properly classified." [Complaint, ¶ 9]. The duty that is claimed to have been breached exists, if at all, solely by virtue of an implied contract between Plaintiffs and Defendant or misrepresentation. Even if the representations alleged to have been made by persons in the Office of the County Attorney were sufficient to amount to an implied contract, they do not impose a duty on Defendant that would expose them to liability in tort.

Plaintiffs acknowledge that the elements of misrepresentation include the following:

> (1) a representation; (2) the representation was false; (3) the representation had to do with a past or present fact; (4) the fact was material; (5) the fact was susceptible of knowledge; (6) the representor knew the represented fact to be false, or, in the alternative, asserted it as his or her own knowledge without knowing whether it was true or false; (7) the representor intended to have the other person induced to act or justified in acting upon it; (8) that person was so induced to actor so justified in acting; (9) that person's action was in reliance upon the representation; (10) that person suffered damage; and (11) the damage was attributable to the misrepresentation.

Weise v. Red Owl Stores, Inc., 286 Minn. 199, 202-203, 175 N.W.2d 184, 187 (1970). However, Plaintiffs' Complaint does not allege that the elements of misrepresentation are present in this case, nor does it seek to recover based upon misrepresentation.[1] In any event, it would be quite an unusual case in which a County policy could be altered in employment decisions by representations made by "officials" of the County.

---

[1] Plaintiffs' only written comment on this aspect of the case is the statement at page 3 of their Post Hearing Memorandum, where they state: "As we have previously discussed this aspect of the case, we will not repeat that discussion here." [Docket No. 16, p. 3].

*Defendant Does Not Have a Statutory Duty to Provide Plaintiffs Membership in PFF.*

A duty can arise from a statute that establishes a standard of care to be followed by a defendant. According to Minnesota case law, "an unexcused violation of a statute that establishes a standard of care is negligence, and liability is the consequence if proximate causation is proved." Lorshbough v. Township of Buzzle, 258 N.W.2d 96, 98 (Minn. 1977). "Part of the determination that a statute supplies a standard of care involves an analysis of whether the plaintiff belongs to the class of persons the legislature intended to protect by enacting the statute." Id. (citing Restatement of Torts 2d, § 286; Akers v. Chicago St. P., M.& O. Ry. Co., 58 Minn. 540, 544 (1894)).

Plaintiffs rely on two separate PERA statutes to establish a duty on the part of Defendant to provide PFF membership to Plaintiffs: (1) Minn. Stat. § 353.63 which sets forth the legislature's stated policy for establishing the PFF pension; and (2) Minn. Stat. § 353.64, Subd. 5(a) which is a statute authorizing continued membership in PFF under certain circumstances. Neither purports to establish any standard of care upon which a claim of negligence could be based.

Section 353.63 entitled "Policy" provides as follows:

> It is the recognized policy of the state that special consideration should be given to employees of governmental subdivisions who devote their time and skills to protecting the property and personal safety of others. Since this work is hazardous, special provisions are hereby made for retirement pensions, disability benefits and survivors benefits based on the particular dangers inherent in these occupations. The benefits provided in sections 353.63 to 353.68 are more costly than similar benefits for other public employees since they are computed on the basis of a shorter working lifetime taking into account experience which has been universally recognized. This extra cost should be borne by the employee and employer alike at the ratio of 40 percent employee contributions and 60 percent employer contributions.

Minn. Stat. § 353.63.

It is quite apparent that this statute does nothing more than state the rationale of the legislature in making its determination that the more costly benefits of PFF are warranted by the special circumstances under which PFF members work. This statute does not create a duty to assign employees to a classification which would afford PFF benefits to the employee. It merely explains the reason why extra benefits are afforded to those who are properly assigned to that category. We cannot conclude that this language had any intention of delegating to the Courts the duty to insure that employees who work in hazardous occupations must be made eligible for PFF benefits.

Section 353.64, Subd. 5a entitled "Transfers" provides as follows:

> A member of the police and fire fund continues to be a member of that fund if transferred to a different position with associated police or fire department functions in the same department or a related department in the same governmental subdivision provided the governing body sends a copy of a resolution to that effect to the association. A police and fire fund member who is elected or assumes an appointive position, including but not limited to, the positions of city council member, city manager, and finance director is not eligible to retain membership in the public employees police and fire fund.

Minn. Stat. § 353.64, Subd.5a. This statute authorizes a member of PFF to remain a member under certain circumstances. It suggests no standard of care on the part of any employer.

There is an additional reason under the facts of this case to decline to accept Plaintiffs' argument. The transfer statute was created by a 1991 amendment. But Plaintiffs transferred from the Sheriff's Office to The Office of the County Attorney in 1979 and 1985. Under Minnesota Statute § 645.21, a law shall not be applied retroactively unless clearly intended so by the legislature. There is no clear intent by the legislature to apply the

statute retroactively. It should likewise not be used to impose a duty upon Defendant retroactively.

Furthermore, in order to establish that a statute creates a duty to act on the behalf of Plaintiffs, they must belong to the class of persons the legislature intended to protect. See Lorshbough, 258 N.W.2d at 98. Plaintiffs do not belong to the group of employees that are protected by the reporting requirement. While they may perform some of the functions of police officers, may detect some crime, and may encounter danger while investigating crimes for the prosecutor, they simply do not meet the eligibility requirements. If the Minnesota legislature thought it was sufficient merely to perform the functions of a peace officer to be eligible for PFF membership it would have said so. Instead it delineated very specific employment and licensing requirements. Plaintiffs do not meet these requirements and thus, Defendant owes no duty to report Plaintiffs for membership in PFF under this statute. It would be circular to reason that this statute provides benefits to Plaintiffs.

Even if these statutes did establish a standard of care, the Minnesota Supreme Court has expressed reluctance to read a private cause of action into a statute where one did not exist at common law.

> Unless a statute manifests a legislative intent to modify the common law, it presumably will not alter the common law. *Haage v. Steies*, 555 N.W.2d 7, 8 (Minn.App.1996). "Principles of judicial restraint weigh against recognizing statutory rights of action that are not clearly expressed or implied by the legislation." Id. (citing *Bruegger v. Faribault County Sheriff's Dep't*, 497 N.W.2d 260, 262 (Minn.1993)). Minnesota courts are reluctant to imply a private right of action. Id. at 9 (citing *Hoppe by Dykema v. Kandiyohi County*, 543 N.W.2d 635, 638 (Minn.1996)).

Summers v. R&D Agency, Inc., 593 N.W.2d 241, 245 (Minn. 1999). In Summers, the

Minnesota Supreme Court held that a criminal harassment statute did not create a private right to sue a harasser. In Haage v. Steies, 555 N.W.2d 7, 10 (Minn.App.1996), the Court held that an entertainers' agents licensing requirement did not provide a private right of action for a musician to sue his unlicensed agent. In Bruegger v. Faribault County Sheriff's Dep't, 497 N.W.2d 260, 262 (Minn.1993), the Court refused to read a cause of action in negligence against law enforcement agencies who failed to inform crime victims of their rights as required under the Crime Victims Reparations Act.

*There Is No Other Source of the Alleged Duty*

As a general rule, no legal duty is imposed on any person to affirmatively act for the benefit of others. Donaldson v. Young Women's Christian Ass'n of Duluth, 539 N.W.2d 789, 792 (Minn. 1995)(a person generally has no duty to act for the protection of another person, even if he realizes or should realize that action on his part is necessary); Delgado v. Lohmar, 289 N.W.2d 479, 483 (Minn.1979) (citing Restatement (Second) of Torts § 314 (1965)).

The general rule is subject to several exceptions where a legal duty to act for the benefit of another person may arise where one did not exist before. As discussed, a duty may arise out of a statute. One whose negligence places another person in danger is under a duty to use reasonable care to aid or assist that person. See Zylka v. Leikvoll, 274 Minn. 435, 448, 144 N.W.2d 358, 367 (1966). A duty may also arise where a special relationship exists between the parties. See Erickson v. Curtis Inv. Co., 447 N.W.2d 165, 168-69 (Minn.1989); see also Restatement (Second) of Torts § 314A (1965). Usually, a special relationship giving rise to a duty is found only on the part of common carriers, innkeepers, possessors of land who hold it open to the public, and persons who have

custody of another person under circumstances in which that other person is deprived of normal opportunities of self-protection. Harper v. Herman, 499 N.W.2d 472, 474 (Minn.1993); Restatement (Second) of Torts § 314A. Typically, the plaintiff is in some respect particularly vulnerable and dependent on the defendant, who in turn holds considerable power over the plaintiff's welfare. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 56 (5th ed. 1984). To reach the conclusion that a special relationship exists, it must be assumed that the harm to be prevented by the defendant is one that the defendant is in a position to protect against and should be expected to protect against. See Erickson, 447 N.W.2d at 168; Donaldson, 539 N.W.2d at 792.

A duty to act with the due care of an ordinary, prudent, reasonable person may arise when a person gratuitously acts for the benefit of another, even though under no duty to do so. See State of Minnesota v. Philip Morris Inc., et. al, 551 N.W.2d 490, 494 (Minn. 1996)(citing Restatement (Second) of Torts § 323 (1965) and Cracraft v. City of St. Louis Park, 279 N.W.2d 801, 806 (Minn. 1979)). This assumption of a duty to act with care is limited to situations where a defendant is acting for the protection of a plaintiff's person or property and physical harm results. The Restatement (Second) of Torts states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as *necessary for the protection of the other's person or things*, is subject to liability to the other for *physical harm* resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965)(emphasis added).

Defendant did not place Plaintiffs in peril nor does any special relationship exist by virtue of the parties' employment relationship. Instead, Plaintiffs rely on the theory

that one who begins to act for another's benefit assumes a duty to act with care. More specifically, that Defendant assumed a duty to act on Plaintiffs' behalf based on its oral representations that it was "working on" obtaining PFF membership for Plaintiffs.

Plaintiffs analogize their situation to that presented to the Minnesota Supreme Court in State of Minnesota v. Philip Morris Inc., et. al, 551 N.W.2d 490, 494 (Minn. 1996), In that case, the Court discussed the possibility of a special duty arising out of oral representations by tobacco companies. Tobacco company defendants conveyed to the public that:

> their products were not injurious to health, and furthermore, as evidence of their good faith belief in this assertion, "pledged aid and assistance to the research effort into all phases of tobacco use and health" and "accepted an interest in people's health as a basic responsibility."

Id. at 492. While the tobacco companies were pledging their responsibility for the public health, they were simultaneously suppressing research which demonstrated the harmful effects of cigarette smoke. Id. at 492. The plaintiff, Blue Cross Blue Shield, argued that through their representations, the tobacco companies imposed upon themselves a "special duty" to Plaintiff as a "protector of the public health." Id. at 494. The Minnesota Supreme Court ultimately refused to let Blue Cross proceed on their special duty theory for lack of standing. Id.

Plain readings of the Minnesota Supreme Court's discussions in Philip Morris, and an earlier case upon which the tobacco case relies, Cracraft v. City of St. Louis Park, 279 N.W.2d 801, indicate that special duty claims are limited to cases where a defendant acts for the protection of a plaintiff or her property and physical harm results. The Philip Morris and Cracraft decisions expressly base the existence of a special duty on the

Restatement (Second) of Torts § 323, quoted above, which states that one who acts for the "*protection of the other's person or things*, is subject to liability to the other for *physical harm* resulting from his failure to exercise reasonable care." Philip Morris, 551 N.W.2d at 493-494 (quoting Restatement (Second) Torts § 323); Cracraft, 279 N.W.2d at 806, n. 9 (quoting Restatement (Second) of Torts § 324A which is essentially the same provision cited above, but deals with liability to third persons). The Philip Morris case involved physical harm to smokers' health. Cracraft involved two boys who were killed and others severely burned as a result of the city's allegedly negligent inspection of chemicals at a school.

In the instant case, a special duty does not arise because Defendant never assumed to act for the protection of Plaintiffs' person or property. If Defendant assumed to act for Plaintiffs at all it was only for their economic welfare. Furthermore, Defendant can only be liable for *physical harm* that resulted from their failure to use due care. Plaintiffs do not allege any physical harm; they allege economic harm. [Complaint, p. 8, (Plaintiffs "must retire later and will receive greatly reduced pensions")].

Even if Plaintiffs proved some physical harm, Defendant did not assume a duty or begin to act on any duty of providing membership in PFF. Defendant never promised Plaintiffs membership, it merely stated it would 'work on' obtaining PFF membership for its criminal investigators. Plaintiffs knew they did not have membership from the time they started work and knew for the duration of their employment that PFF deductions were not being made from their paychecks. This is not a case like Philip Morris where a party makes a pledge but acts in a completely contradictory way to that pledge. There is a big difference between the tobacco companies stating that they will take

responsibility for the health of smokers while suppressing important evidence of health risks, and Defendant saying it will "work on getting PFF membership."

Finally, even if a special duty were imposed on Defendant, it would be to act with due care concerning Plaintiffs efforts to obtain membership in PFF. It is not, as Plaintiffs characterize it, a duty to actually place Plaintiffs in the PFF fund. The Minnesota Supreme Court referred to the "special duty" as "nothing more than convenient terminology...for the ancient doctrine that once a duty to act for the protection of others is voluntarily assumed, due care must be exercised even though there was no duty to act in the first instance." Cracraft, 279 N.W.2d at 806. Failure to actually provide membership does not substantiate that Defendant acted without due care and Plaintiffs have not alleged any facts which indicate Defendant fell below this standard.

Plaintiffs fail to state a claim for negligence because they cannot show that Defendant has a duty to act on their behalf. Because Count II of Plaintiffs' Complaint should be dismissed for failure to state a claim, we do not address Defendant's other arguments for dismissal.

## II. Supplemental Jurisdiction

Pursuant to 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." This Court has original jurisdiction over Plaintiffs' federal claim under the Fair Labor Standards Act. The Court could nonetheless decline to exercise jurisdiction over the "negligence" allegations in Count II if

it finds that the supplemental claim raises novel or complex issues of state law or if the state law claim substantially predominates over the federal claim. See 28 U.S.C. § 1367(c). The decision to decline supplemental jurisdiction is committed to the sound discretion of the court. McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994), but, in the absence of a complex or novel issue, a predominating state claim, or fulfillment of any other statutory exception under § 1367, a court *must* accept supplemental jurisdiction over the state law question. McLaurin, 30 F.3d at 985.

Neither party has asked that the Court decline to exercise jurisdiction. While the attempt to state a cause of action for negligence in this matter may fairly be said to be novel, we do not conclude that it is sufficiently complex to warrant a determination that the federal court should decline to exercise jurisdiction.

## RECOMMENDATION

For the reasons set forth above, it is recommended that Defendant's Motion to Dismiss Count II of Plaintiffs' Complaint [Docket No. 3] be granted.

Dated: December 29, 2000

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **January 12, 2001** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **January 12, 2001**.